Welcome, Counselor. And Mr. Dickey, you may proceed. May it please the Court, my name is Gary Dickey from Dickey, Campbell & Sahag Law Firm in Des Moines, Iowa, who appears on behalf of Keshon Baxter requesting that this Court reverse his conviction under 18 U.S.C. 922 G3. In Bruin, the United States Supreme Court made clear that a citizen's possession of a firearm is conduct that falls within the protections of the Second Amendment. Thus, if the government seeks to restrict that conduct, the burden falls upon the government to prove that the restriction is consistent with our nation's history and tradition of firearms regulation. That requires the government to identify historical analogs that are comparable to the contemporary restriction. And from there, the district court must examine the why and the how of those analogs to see if it's consistent with our tradition of regulation. Against this backdrop, the district court's ruling denying the motion to dismiss was erroneous for at least two reasons. The first is the district court did not hold the government to its burden of identifying historical analogs that would demonstrate that it was consistent with our nation's history. And then second, the district court did not engage in the how and the why analysis that's required to determine that the historical analogs are relevantly similar. With respect to the analogs that were identified by the district court, it identified two. The first, and I'll take them in order, the first analog was our nation's... Well, let me ask you this question to start with to get this out of the way. The crime here, the alleged crime, is being an unlawful user of a controlled substance in possession of a firearm. Correct. So where do we find in the record what the district court found was the nature of the appellant's controlled substance use? For example, the frequency of it, how long he'd been a user. Where's all that information? So the short answer is it's not there and I think that's a problem for the government. We filed our motion. They filed a reply. There was no evidentiary hearing. We take the position, Mr. Baxter takes the position, that at the time of the motion to dismiss, it was the government's burden essentially to put up or shut up and they offered no evidence to support the suggestion of his frequency. We did cite to, there was a detention hearing and so we cited to those portions of the detention hearing transcript that were in the record at the time of the motion. But to the extent that my friend, Mr. Call, will get up here today and say that there's other evidence in the PSIR, I don't think that that satisfies their burden. Well, are you satisfied with the detention hearing record as being something that can be considered by this court in this appeal in order to evaluate the factual circumstances of the controlled substance use? I do, only for the fact that we cited to it in our initial motion. So I think it's incorporated into the record by virtue of our citations and it existed at the time of our motion in the court's decision. And then if we look at that, what does that tell us? What were the facts of the drug use as explained at the detention hearing? So the evidence is that at the time of the arrest, he had a ball of marijuana in his pocket, but there was no testimony at the detention hearing indicating that he was intoxicated or identifying what his prior use was. There was testimony at the detention hearing that there were pictures on his phone possessing firearms, that there were pictures on his phone smoking marijuana, and there were also videos on his phone. But I made it very clear in my cross-examination of the agent, he couldn't identify any instance from his review of Mr. Baxter's phone in which there was using marijuana contemporaneously with possessing a firearm. And so in the absence of any type of evidence of intoxication, I think it falls, the government has fallen short under certainly the analysis that's been employed by the Fifth Circuit, which we would encourage this circuit to follow. So going back to the district court's ruling, the district court first identified historical analogs in the form of laws that relate to intoxication. I think this court's decision in Veasley, for which mandate has issued, I think kind of resolves that issue. As I read Veasley, this court didn't think that our history of laws with respect to intoxication and the use of firearms were a sufficient historical analog to warrant a restriction under 922 G3. But even if I'm wrong about my reading of Veasley, if you look at the underlying statutes upon which the district court relied, I mean, it's problematic because the district court and neither the government nor the district court really set forth the specific statutes. Rather, they only referred to other cases. So for example, the district court refers to a district court case from Oklahoma, United States versus Lewis. If you go to Lewis, Lewis identifies a Virginia statute that made it illegal to shoot a gun while you're at a gathering of people drinking. And then this kind of legislative finding from New York that it's dangerous for people to go door to door possessing a firearm while intoxicated celebrating the New Year's. I don't think that that meets the burden that's required under Bruin. There are some cases that talk about the disarming of people with history of violence who were under the influence, and I can't remember where they are. And I'm not sure that they've ever been cited in any of these cases here. But in just reading other post-Bruin cases, I remember seeing some court discussing that. And in this case, you have this situation where this particular defendant does have some history of violence in his past. We have some erratic conduct on the night in question or the day in question, and we have flight. And you know, if those cases that admittedly, man, somebody be telling me file a 20HA letter right now if I was a lawyer. But you know, but how would that affect our analysis if those cases actually do exist? So I guess I would say two things. First is, I don't, I think you have to take a look at the record as it was, you know, as it was made on this as-applied challenge, and the government had their opportunity to cite to those cases and to identify the history. And I think they just fell short. And then secondly, then you get to the why and the how analysis, which the district court did not engage. I'm sorry, the what analysis? The why, why for those statutes to which Judge Erickson was referring, and then how. And so, you know, with the very little intoxication statutes that were identified in Beasley, you know, those were not disarming statutes. Those were statutes that prohibited the use. The use, and they almost all are prohibiting use. I mean, you can go, you know, you can go back and look at those municipal ordinances in places in the West that predate statehood for places. Well, Dodge City in Kansas, Fargo in North Dakota, where they had, you know, people could not possess firearms while in saloons or while drinking, you know. And those ordinances are out there. But I don't recall having seen any state statutes anywhere. I get two things for that. We don't dispute the why. I mean, you know, if somebody is intoxicated to the point where they're delirious, that's dangerous. It's the how, and you know, at least the statutes that have been identified, if you hunt and peck in this record, they're not disarming statutes. And so, it's a little unfair if this court were to go off on its own and do its own research when Mr. Baxter hasn't had an opportunity to respond to those. I agree. I get it. Which leaves the mental illness as the other alternative. And I guess in Beasley, this court kind of opened the door to the potential that there may be situations where the use of drugs is akin to mental illness. We would ask the court to adopt the Fifth Circuit's analysis in Conley, in Daniels, and in Gill, in our 28J, where, you know, there must be evidence of drug use sufficient to rise to the level that somebody is mentally ill to the point where they could be, you know, committed. And I don't think we have that on this record. The other problem you have is, you know, when you start incorporating some of these statutes, I think you run headlong into our vagueness argument, which is I don't know how Mr. Baxter is supposed to understand what's criminal and what's not when that doesn't appear in the terms of the statute. Thank you. Mr. Call? Thank you. May it please the court, Counsel Andrew Call for the United States. Let me start by addressing Judge Shepard's question about the record. In the detention hearing transcript, we had testimony that the defendant was consuming marijuana on nearly a daily basis between the spring of 2002 and March of 2023. That's at page 9 of the detention hearing transcript. So there's no question that he was a regular user of an unlawful controlled substance. The other point, the date of his arrest was May 21st, 2023, where he was in possession of the loaded Taurus .40 caliber pistol in his front pocket of his shorts, and he had a ball of marijuana in the other pocket. But what's also important to understand is the indictment that he pled guilty to charged him with possessing that firearm over a range of time from specifically August 31st, 2022 up until the date of his arrest. And the undisputed facts, and I will mention the undisputed facts set forth in the pre-sentence report as well as from the detention hearing, indicate that the starting point, August 31st, was a date where the defendant was in possession of that same firearm based on a Snapchat video or a Snapchat photograph that was posted on his Snapchat account called GlockboyKB5. So we have the defendant... Is that in the record? Yes, that's in the detention hearing transcript, I believe, at pages 8 and 9. It's also... In January of 2023, the defendant was admitting to being a daily marijuana user. It is difficult to address these issues on a motion to dismiss, but that's where we are. And I think based on the undisputed facts, the defendant clearly was an unlawful user of marijuana at the time he possessed the firearm. So you're suggesting these are the only facts we need to decide this case? I think at bottom those are the key facts. Well, not key. The only... I'm sorry. So this is the only... These are the indictment itself and maybe some statements that the defendant may have made in his brief as to what he did and the hearing for the detention record. Those are the things that we have to look at. The only things that we have to look at, is that right, to determine this? I think those are the facts that Mr. Dickey has indicated are undisputed. The district court also would have had the criminal complaint that is relatively consistent with the detention hearing transcript. And I think was actually offered as an exhibit at the detention hearing. So that would be part of the record as well. But again... So is that all? I just want to make sure I've got the full package here. It's not a trap. I just want you to tell me. No, I think that's it. I think that the pre-sentence report is consistent with all that record. Maybe it goes into a little bit more detail. But the record that you mentioned... Is that part of it too? I don't think it's necessary for the court to consider the pre-sentence report in order to decide the issue. Okay. Thank you. Well, would you agree that the district court's order doesn't give us any facts about usage, about being a user, or the appellant's circumstances as a user? I mean, this is an as-applied challenge. So I just thought we would be looking at his circumstances. And would you agree that the district court's order doesn't... It never gets around to telling us what facts it found? I think that's... That's basing the decision on? That's an accurate representation of the district court's order. But again, I mean, this court can certainly look at the whole record and confirm on any basis. I mean, I think there are some cases from elsewhere that talk about the problem of trying to address these issues on a motion to dismiss because you really have to try the general issue in order to understand. Yeah, and that gets us to Rule of Criminal Procedure 12B1 that says, which is capable of determination without the trial on the general issue may be raised before trial by motion. So I'm just wondering if this is a situation where this objection or defense was really not capable of determination without waiting until a trial. Yeah, I mean, there is a Tenth Circuit decision called Pope written by then-Judge Gorsuch that makes that point and declined to address an as-applied challenge on the motion to dismiss because he saw it as disputed issues of fact that could not be resolved at that juncture of the proceedings. So is that the course you think we should take? Should this be remanded back? I think there are sufficient undisputed facts here that are sufficient to uphold the district court's ruling. As an alternative, certainly a remand for a trial of some sort would be possible. I do want to address my friend's suggestion that there needs to be simultaneous intoxication and possession of the firearm. I think we have that here because the allegation was he possessed a firearm over an extended period of time, but I also think even the recent Daniels case makes clear that that's not required even in the Fifth Circuit. I'd also address Veasley and the questions of intoxication and mental illness being appropriate analogs. It's interesting Conley in the Fifth Circuit actually relied on the intoxication analog. Veasley in this circuit relied on the mental illness analog. Both of those decisions did not have the benefit of Rahimi, and I think one of the problems with the Fifth Circuit analysis is that the Fifth Circuit was viewing these analogs in isolation rather than taken together. I think the Supreme Court has clarified in Rahimi that we really should not be addressing this through a divide and conquer approach. There's sufficient evidence available to the court that the legislature can find there's a special danger of misuse of firearms by drug users. The legislature can temporarily disarm categories of persons who presently present a special danger of misuse presented by people other than normal law-abiding citizens. I want to very briefly address the vagueness argument. I think that's resolved by the Brammer case. This court's decisional law indicates there's a temporal nexus required between the drug possession and drug use, and where a defendant such as Mr. Baxter possesses firearms while regularly using marijuana, which was the fact pattern presented in Brammer, that does not present an unconstitutional vagueness problem. The defendant simply, while Brammer has speculated there might be some case somewhere where there would be a vagueness argument, this case isn't it, and nor was the Brammer case. In sum, the Second Amendment does not compel Congress to allow a defendant to simultaneously choose both gun possession and unlawful drug abuse. Here on this record, the defendant was clearly a marijuana user over an extended period of time. The courts have recognized, as indicated in the briefing, as indicated in our Rule 28J letters, as indicated in the decisional cases we've cited to the court, that Congress can protect the community consistent with the Second Amendment by prohibiting drug users from possessing firearms. For those reasons, and based on the record of this case, we ask that the decision of the district court and the judgment be affirmed. All right, counsel, you're just about out of time. I'll allow two minutes. Thank you. May it please the court? Your Honor, what Mr. Baxter would ask for is a very narrow ruling from this court, and that is to follow the analysis from the Fifth Circuit, which is in the absence of the use of drugs that renders somebody intoxicated to the point where they are akin to being seriously mentally ill, an as-applied challenge should be granted. If you follow that, then I think the court, if it just sticks to the record here, makes a ruling that the evidence that was presented in the findings of the district court just don't meet the burden that's required in a brewing. Judge Shepard, to the extent you asked about is this the type of case that requires a trial, I think when you're talking up, I would say it's akin to a motion to suppress, where you have evidentiary hearings and the court has to make a finding on some of those. I don't know that a trial is required, and it certainly wasn't required in Gill, which was decided by a district court in the Fifth Circuit. Was there an evidentiary hearing here on this motion to dismiss? There was not an evidentiary hearing, and there was no reason why the government couldn't ask for one, but there wasn't. The court ruled within a week. To force a defendant like Mr. Baxter to have a trial in order to seek to vindicate his Second Amendment rights, it puts him at a real disadvantage if for no other reason he loses the three-level acceptance of responsibility under the sentencing guidelines. And so I think you chill an individual's Second Amendment rights if you put him to having a real serious consequence on a potential sentence if he's wrong about the as-applied challenge. So for those reasons, we ask that his conviction be reversed. The Gill case relied, though, on – I think this was a district court, and the question was the use of marijuana. But I believe that the Gill case made up a record from the guilty plea transcript. Isn't that right? That's what it relied on. May I answer that question?  Sure. Sure, and I guess to the extent that Mr. Baxter has admitted facts in his guilty plea, I think that's part of the record, too. Okay, we keep getting – we're out of time here, and we don't know what the record is. Maybe we should let the district court decide. I don't know, but it's a difficult question. Thank you. But thank you. All right. Thank you, counsel. The case is submitted. We appreciate your arguments today. Of course, the court will render a decision in due course. Does that conclude our business for the afternoon? Yes, it does, Your Honor. Very well. The court will be in recess until 9 a.m. tomorrow morning.